Good morning. Good morning, Your Honors, and may it please the Court, I am Ali Reza Ali Vandi Vafa and I represent the plaintiff. Ali Vandi Vafa? Ali Vandi Vafa, just like it's spelled. Ali Vandi Vafa, okay. I represent the plaintiff and appellant James Wang in this matter. This is a case where, of course, the Court. You'll be using all the argument time. I will reserve three to four minutes. All right, but the person sitting at the table won't be talking. Mr. Marvazzi is here for support. Thank you. This is a case where the EEOC found cause that Sony had violated the ADA and thus had violated California law. Well, they gave you a right to sue later. No, Your Honor. The EEOC actually made a cause determination in this case beyond the normal right to sue letter. They investigated for five years and engaged in an investigation, received both Mr. Wang's side and Sony's side, and found cause that Mr. Wang had been discriminated against and also that Sony had failed to accommodate. Going further, of course, that is also a violation of California law because the FEHA includes the ADA, and any violation of the ADA is also a violation of the FEHA. Despite this, summary judgment was granted inappropriately, as we are arguing, primarily because the defendant came up with a post hoc argument that Mr. Wang wasn't qualified, which is simply untrue. Well, what evidence is there in the record that at the time the suit was filed, Sony knew or should have known that Mr. Wang had the requested three-year experience, practical work experience with JAVA? Because when you just look at his resume, you can't see that. Well, there are multiple issues with that. Well, what evidence? I'm saying what evidence is there in the record that at the time the suit was filed, Sony knew or should have known? Well, actually, at the time the suit was filed, Sony knew or should have known because in the application process, they screened Mr. Wang as one of the qualified applicants for the job. Further, in the application process, after Mr. Wang was told that he was not going to be interviewed and they failed to accommodate his request for a text-based communication system like the AIM, that Sony not only interviewed Simone Wu, but wanted to bring her in for a practical skills test, a second level with Simone Wu, despite the fact that she expressly had zero JAVA experience, not on her resume, not on her educational resume, and not work experience either. And it was Simone Wu who actually canceled any interview because she had a job already and she didn't want it to interfere with her job. So there's multiple issues here with Sony's argument. One is that Mr. Wang, of course, was qualified. Mr. Wang did not have anything other than background education in JAVA generally, and he said that in his deposition. The declaration that was filed and excluded was not raised in your opening brief and you have waived that issue. Well, Your Honor, that's actually incorrect. The declaration, the issue with the so-called sham declaration that the Court stated was addressed in the brief. On this de novo I did Mr. Wang's declaration in your opening brief. You did not assert a challenge to the district court's order excluding the declaration. So that's waiver. Your Honor, I disagree on multiple grounds. One, we did specifically address that the issue within our brief. Secondly, because this is a look at the record at the time the summary judgment was filed. That was in your reply brief that you took that issue up, tried to raise that. It was also in the moving brief. Yeah, cite us to your opening brief. Right. We brought this issue up. In the opening brief, page 15 through 18, talking about the qualification and also the fact that the court did not issue a challenge to the district court's order. No, that's wherein, Your Honor, is where we brought up the citations to the declaration. And then when the defendants slash appellees. So you didn't raise it in your opening brief. I disagree, but I can see how the Court would argue, would say that it wasn't raised as a specific point in the brief. But I don't agree that it was a waiver. And I don't agree that it was a waiver in any way, be that as it may, even if the court were to completely not consider the declaration, even if the court would say the declaration the issue with the declaration wasn't brought up in the opening brief, even if all those things were true, it's simply that the argument, their argument simply has to be that Mr. Wang was put in a pool of qualified candidates at the beginning, at the time the lawsuit was filed, and at the time of the hiring process. The second he was given an opportunity to come out and interview by this person, this independent contractor that was sorting people out, and they came back and said, well, we've already got somebody we like, don't schedule any more interviews. Now, what is wrong with that approach? Well, except that that's not true. That was not, Sony's argument to that effect was untrue, because they did schedule more interviews. They had more interviews scheduled from the initial pool of candidates, and they even scheduled Simone Wu in for an interview who, by their measure, had zero qualification, and this was after Tiffany Harrington had already told Mr. Wang that they simply weren't going to talk to him because they'd already found someone they liked, even though. Is it your position, then, that on the third prong of McDonnell Douglas you've raised pretext evidence? Oh, we've absolutely raised pretext evidence. Is that your point? Absolutely. Just a yes will do. Yes, Your Honor. No, it has to be absolutely. Absolutely. Sorry, Your Honor. Sorry, Your Honor. Well, you say you did argue that before the district court? Which point, Your Honor? With respect to Simone Wu? Absolutely. That is raised in the summary judgment opposition, page 7 through 9, particularly towards the end of that, and specifically... And there was nothing in there that suggested that they would hire her regardless of her Java experience. Well, actually... It was to check her qualifications a little bit deeper. It was to check her skills deeper. Yeah. And Mr. Wang... But they didn't do anything about it, and Mr. Wang didn't have any skills in that area. Well, that's not true either, Your Honor. Well, he said it in his deposition. That's not what he said. Mr. Wang said, Mr. Wang said, one, in his deposition, that he had worked directly in Java at least 3 to 5 percent of his time at IBM. In his deposition, he testified to having little work experience with Java and testified he would need on-the-job training in it. That's at page 126 to 128, and 131 to 132. And he then said he had the records of experience, but the district court said it was uncorroborated self-serving and contradictory to his deposition testimony, and that was not challenged. We'll come back around to that again. Well, I disagree, Your Honor, that it wasn't challenged, but the other issue is that even within the deposition, within this Java... Well, assume it was pretext. What evidence is there in the record? The evidence within the record is that they still were interviewing candidates, that they lied to Mr. Wang. Tiffany Harrington outright lied to Mr. Wang that they were not interviewing any more candidates. They were. They were interviewing initial pool candidates and... Well, initial candidates had already been scheduled. Wu is the only one we've got that you say that they were going to look at her to see if her skills were a little deeper, look deeper to see about her skills. Which was an interview. And they're literally... We have one. This is the one interview you're talking about. In addition to the ones that had already been scheduled. Well, they didn't cancel anything that had been scheduled. And they continued bringing, as noted, continued bringing people in. But I'll also note the deposition testimony of Brian Frank, which we hadn't gotten  The deposition testimony of Brian Frank, which is addressed within the separate statement and addressed within the argument. Mr. Frank admits that a candidate with Mr. Wang's history, skills, education, was qualified. That goes unchallenged by Sony. Completely unchallenged. That Mr. Frank, who was the person who made the final hiring decision and was set to make the final hiring decision within this case, that Mr. Wang, someone with Mr. Wang's skills... Is he saying he was qualified, he was capable to do the job? Or does he say that he met the requirements as stated in the resume? The initial resume that he put in didn't meet the requirements, right? No, that's false. That's where Sony said he was required. They screened out in the resume process, and they actually show within the resume process, and that their recruiter screened out the people whose resumes met what they were looking for. It's only after this lawsuit is filed and after that deposition where, again, you're dealing with a person who's dealing with a sign language interpreter, where they don't go further in to that surface-level analysis that they ever come up with this argument at all. And then after that deposition, with all the opportunity to coach Mr. Frank or whatever anyone wants to do, they still admit Mr. Frank, who they stated was the hired, Mr. Frank stated that someone with Mr. Wang's qualifications was qualified for the job. That is... And so there, Mr. Wang, consistent with the EEOC's finding of cause, of cause, which they don't do particularly often, Mr. Wang was denied the accommodation, was discriminated against based on his disability in the hiring process. Is that binding on us? The EEOC's determination? It is not absolutely binding. But the case law, as noted in all of the briefs, the case law, as noted, suggests an EEOC determination, unless there is a finding of outright perjury, an EEOC agrees or disagrees. An EEOC determination in the summary judgment stage is highly probative and in almost every situation should guide the court, whether it's the district court or the court of appeal, to reject a summary judgment and set the case for trial. Do you want to save any time? I will just wrap up right now and save the remainder. Again, this is a summary judgment issue, not a jury trial. These are triable issues of fact as to whether Mr. Wang was qualified, as to whether Sony made this qualification up later. All of these issues are or whether Mr. Wang could have come out or whether Ms. Von Apenty would have been hired anyway. All of these issues should be set for trial with a jury. And with that, Your Honors, I will submit and save for rebuttal. Thank you. Good morning, Your Honors. Good morning. Mark Wasserman for Appellees in this case. Can I pull the microphone down a little? Excuse me. Thank you. Okay. I hope that's better. Your Honors, I would like to address two specific points right away. First off, on the EEOC cause determination, there is Ninth Circuit authority, which we cited in our brief, specifically the Mondaro v. Salt River. You should speak up, please, a little bit. Excuse me. The Mondaro v. Salt River case. Bring that microphone closer to your mouth. There we go. Or project a little more. All right. Here we go. Yes. That the Mondaro v. Salt River case finds that an EEOC cause determination that does not contain its reasoning, in other words, that simply a summary cause determination does not have the persuasive value that counsel attributes to it. Essentially, that's all that there was in this case as far as the EEOC cause determination. What about as the initial job description included a requirement of experience with Java, why isn't Sony's decision to interview Mr. Wang an indication that he met the minimum requirements for the position? Yes. Your Honors, the various responsible people at Sony testified to that specifically. Mr. Frank specifically stated that the fact that someone receives an interview does not mean that the person is qualified. It just means that that's someone that the company wants to look closer at. Well, that seems a little, why would you interview people that you don't think are qualified? Well, precisely. I mean, because some on the MQ, it's just like if, I know when I've interviewed people, say if I require a B.A. for a position, then everyone that doesn't have a B.A. gets put in the not qualified pile and I don't look at them. Your Honor, in this case, and this is specifically referenced in the supplemental excerpts at pages 98 and 101. I'm sorry. Supplemental what? The supplemental excerpts of record at pages 98 and 101. Mr. Frank specifically stated that what he does in terms of an interview is to determine whether someone beats the qualifications for the position. That's the way that he. Do you agree with counsel's representation that Mr. Frank stated and admitted that Wang was qualified for the job? The opposite is the case. I take it you mean you don't agree. I certainly do not agree. And, in fact, Mr. Frank stated in those two cited sections, pages 98 and 101, of the supplemental record that, in fact, when he looked at the Wang resume, he did not see the practical JAVA experience. And, furthermore, Mr. Frank stated in his declaration to the district court that when he examined the deposition citations where Mr. Wang discusses his experience in JAVA, that that is not someone who shows the requisite qualified experience in JAVA. And that is Mr. Frank's testimony. Ms. Harrington also stated on page 68 of the supplemental excerpts of record that when she schedules people for interviews, it's because those people want some additional looking at. She does not make a determination about qualifications. And so in this situation, what counsel for the plaintiff is stating, essentially that Mr. Frank made a determination that this person was qualified is just not accurate. And, in fact, on page 238 of the supplemental, I'm sorry, 238 of the excerpts of record, Mr. Frank states that Wang's resume listed JAVA as a skill but not as a work experience. There is no way that Mr. Frank admitted that Mr. Wang was qualified for this position. And, as we've cited to the record, actually the opposite is true. Your Honors, there's been some testimony about Simone Wu, and I want to talk about that for a moment. In this situation, Simone Wu is someone whose resume came up at a later phase in the job search. The testimony from Ms. Harrington was that Ms. Wu showed some interesting characteristics. She was a Stanford graduate. She worked at Google. And this was someone that the company was interested in taking another look at. As things turned out, an interview was scheduled. Ms. Wu had to postpone it, not cancel it, but try to postpone it. And the company did not reschedule the interview because they had interviewed Ms. Vonepente and had determined that Ms. Vonepente matched precisely the qualifications for the position. And, in fact, Your Honors, I would point to undisputed facts. Well, I think I heard appellants say, and I'm rephrasing, but maybe I, I think I heard appellants say in discussing the issue of pretext that Tiffany, is that, is that a person? Tiffany Harrington. Tiffany Harrington lied to Mr. Wang because she told him they were not interviewing more people when, in fact, they were. Not true. I think he was saying that is evidence of pretext. Got it. So what does the record say? Yes. So the record states that there was an e-mail from Tiffany Harrington to Mr. Wang dated April 8th. And that e-mail proposed to Mr. Wang the possibility of some additional times to come in for an interview. On April 10th, Ms. Harrington wrote back to Mr. Wang again stating that in the interim that the company had interviewed some other candidates who showed some promise and that Mr. Wang should check in again to see whether it was necessary to come back in. That was the last communication between Tiffany Harrington and Mr. Wang. Tiffany Harrington did not tell Mr. Wang that the company had stopped interviewing or had filled the position or anything of that type. Instead, what Ms. Harrington stated was that, hold on, you know, don't fly all the way out to Los Angeles from New York just yet. The company has interviewed somebody that they like. So are the Harrington statements in the record by way of e-mail or are they by way of deposition or what's their form in the record? They are by way of e-mails that are in the excerpts of record at pages 164 to 172. Okay. And, Your Honors, in that regard, the decision by Ms. Harrington to send that April 10th e-mail to Mr. Wang saying, you know, hold your horses, we've interviewed somebody that we think we like, that came one day after Ms. Harrington's death in 2009. So essentially that's the sequence of events. What happened was Mr. Wang disclosed that he was deaf on March 28th, 2009. This is all in that e-mail string that I've referenced. Ms. Harrington, irrespective of that disclosure, tried to schedule interview times, had to schedule an interview that was specifically scheduled with Mr. Wang because the department was busy. All of the interviews for all of the candidates were postponed for that reason on that date. So, in other words, Mr. Wang was in the same boat as the other candidates because his confirmed time was postponed indefinitely. And during the next several days, Ms. Harrington communicated with Mr. Wang about setting up some additional dates. There was no point at which Ms. Harrington cut off the effort to have Mr. Wang come in prior to that April 10th date. And, in fact, in the supplemental excerpts of record at page 80, Ms. Harrington communicated with Trish O'Brien, who was basically the person at Sony who was internal to Sony and handling the job interviews, and transmitted Mr. Wang's e-mail string where he disclosed that he was deaf and said that, okay, let's set up an interview for this guy. This was an e-mail dated April 2nd. Ms. O'Brien's response to that e-mail was to say what was a one-word response, cool. It was what? I'm sorry. C-O-O-L, cool. That was it. She did not say anything to indicate that deafness was a problem or that the interview with a sign language interpreter, nothing along those lines. Ms. O'Brien's only reaction when basically given this information about Mr. Wang, that here's somebody, here's an e-mail string. It includes that he's deaf. Ms. O'Brien saw this e-mail string, and her only reaction was a positive one. She said, sure, cool. And so, in other words, there is no evidence in this case of pretext. The Simone Wu matter, as a matter of fact, is consistent with Sony's treatment of other people in this case, which is namely, Sony decided that Ms. Bonaparte, who according to Undisputed Fact 17, precisely met the qualifications for this position. When Ms. Bonaparte was interviewed, that had a ripple effect on the other interviews in this matter. And that includes Simone Wu. It includes the other batch of initial applicants. There was no determination by the company that anybody was qualified for this position until they were interviewed. And as it turns out in this case, the burden is on the plaintiff to establish a prima facie case of qualifications. That's set forth by the California Supreme Court in Green v. State of California. It's his obligation. That obligation was not fulfilled. They attempted to fulfill it after the fact by the sham declaration, which they then... Let's just, assuming for a moment that we determine that we can consider Mr. Wang's declaration, does it make any difference to a determination as to the reasonableness of Sony's decision not to offer him a second interview? No, it does not, Your Honor, because even that declaration, excuse me, even that declaration, if it were considered by this court, which should not be, but if it were considered by this court, is actually very crafty in saying that Mr. Wang worked on programs that required Java knowledge. The deposition testimony indicates that Mr. Wang utilized that Java knowledge only on a, quote, surface level, only, quote, 3% of the time. And that it was a, in other words, a trivial part of his job experience. So in fact, the declaration really doesn't change that. It's worded rather misleadingly and self-servingly. But if you were to read it consistently with, somehow, try to reconcile the declaration with the deposition testimony, what you would find is that Mr. Wang still had only a surface practical experience with Java. And what was the requirement with respect to Java? A surface acquaintance, would that be sufficient? Not at all. It was, in fact, three years of practical work experience with Java. That's directly in the, in the qualifications for the position. And that is the match that Ms. Von Apenty had according to Undisputed Fact 17. Kennedy. So your answer to Judge Callahan's question was even if we consider the declaration as not being sham, the declaration's facts, as stated, don't meet the requirement of the, of the employer. That's, that's correct, particularly if the declaration is read along with the deposition testimony. In other words, the declaration says, yes, I worked on programs that required Java knowledge. The deposition testimony says, yeah, but I only worked in Java roughly 3% of the time only on surface stuff. The only way to square that circle to reconcile those two statements is basically to say, well, I worked on some programs that contained some Java in them, but I only worked in Java roughly 3% of the time, only on surface matters infrequently. All right. Unless any of the panel members have any additional questions, your time has expired. Thank you, Your Honor. Thank you. Any questions before I start and rebut? Go ahead. Thank you, Your Honor. Mr. Frank admits in his deposition, one, if we want to talk about Simone Wu being this Stanford graduate who went to Google, Mr. Frank states in his deposition that an IBM candidate was someone he considered particularly interesting. Mr. Wang had worked at IBM for five years. Mr. Frank, again, admitted Mr. Wang was qualified. The idea that Von Appenty was somehow this unicorn candidate doesn't hold with the facts. Ms. Von Appenty didn't have her second interview until over a month after her first interview or approximately a month after her first interview, and that was two weeks after the issue with Simone Wu, where they said she had no practical Java experience. It was specific in an email from a gentleman named Hitesh Lad, but let's talk to her anyway. And that gets to the final point. I think I've argued the failure to hire, and I think I've stated how we completely disagree with the district court's ruling. However, there's another issue, too, is that the failure to grant the interview in the first place is also a violation of the ADA and thus the FEHA and was one of the findings made by the EEOC. It was both the failure to interview and the failure to hire. Mr. Wang presented Sony with a specific alternative, one that throughout the record is noted as a method Sony used to communicate. That's the AIM, which doesn't exist anymore but certainly did then. And they didn't give him any sort of an interview, despite everything else, despite his offering to pay for his own plane ticket to help them accommodate him. His own plane ticket from Poughkeepsie, New York out here to Los Angeles. So I think the record is very clear, and I know I'm over my time so I'm going to submit, but I think the record is very, very clear in this case. The only sham here was this alleged qualification that they came up with after they realized they had broken the law, after the EEOC had told them they'd broken the law. And that it is inconsistent in the record that it actually was any sort of qualification. And finally, that Mr. Wang, who had a master's degree, and this was even covered in the deposition taken by the previous counsel, had a master's degree dealing with JAVA in addition to his work experience. With that, we'd like this to go to a jury to make those factual determinations on these genuine material issues. Thank you very much. Thank you. This matter will stand submitted. The Court will take a short recess, and then we'll resume to hear the final case. All rise.
judges: Kelly, Callahan, Bea